UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:17-cv-707-RJC-DCK

| RICKY CAMPBELL, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) ORDER |
| KIRSTEN M. NIELSEN, SECRETARY OF HOMELAND SECURITY,[1] | ) |
| Defendant. | ) |

**THIS MATTER** comes before the Court on Federal Defendant's Combined Motion to Partially Dismiss Plaintiff's Complaint and Motion for Summary Judgment, (Doc. No. 9), and the parties' associated briefs and exhibits, (Doc. Nos. 10–12, 14).

I. BACKGROUND

Plaintiff Ricky W. Campbell ("Plaintiff") is a former employee of the Transportation Security Administration ("TSA"), which is a component agency of the U.S. Department of Homeland Security ("DHS" or "Defendant"). Previously, Plaintiff

---

[1] Under Federal Rule of Civil Procedure 25(d), Secretary Nielsen is substituted as Defendant in this action in place of former Acting Secretary of Homeland Security Elaine C. Duke, who was named in Plaintiff's Complaint. Secretary Nielsen's appointment as the leader of the U.S. Department of Homeland Security was confirmed by the Senate on December 5, 2017.

1

was employed by TSA as a Lead Transportation Security Officer ("LTSO") at the Charlotte Douglas International Airport ("CLT"). In his Complaint, Plaintiff alleges that TSA violated Title VII by retaliating against him for engaging in prior equal employment opportunity activities[2] and by subjecting him to a hostile work environment. Plaintiff claims TSA retaliated against him by denying him overtime and not selecting him for certain supervisory positions for which he applied and was qualified. Plaintiff claims that six specific acts were retaliatory and/or subjected him to a hostile work environment:

1. On or about February 4, 2012, Complainant was not selected for the Supervisory Transportation Security Officer (STSO) position advertised via Vacancy Announcement (VA) CLT-12-444666.

2. On or about April 5, 2012, Complainant was not selected for the Supervisory Transportation Security Officer (STSO) position advertised via Vacancy Announcement (VA) CLT-12-469756.

3. On or about August 4, 2012, Complainant was not selected for the Supervisory Transportation Security Officer (STSO) position

---

[2] Plaintiff bases his claims on his prior EEO activity involving two complaints of race discrimination that he improperly filed with the Equal Employment Opportunity Commission ("EEOC") in October 2010 and October 2011. See Campbell v. Burgess, et al., No. 3:11-cv-68, 2012 WL 3203934, at *3 (W.D.N.C. Aug. 6, 2012). Because Plaintiff was a federal employee with different administrative remedies available to him than those available to private citizens, the EEOC dismissed both complaints because, as a federal employee, Plaintiff could not file complaints directly with the EEOC before first presenting the complaints to his employing agency through the required administrative process. See id. After the EEOC dismissed his complaints, Plaintiff filed a lawsuit in this Court on February 4, 2011. Id. The Court dismissed the action on August 6, 2012 because Plaintiff "failed to exhaust the administrative remedies available to federal employees pursuant to 29 C.F.R. § 1614." Id. In the instant case, Defendant does not dispute that Plaintiff's two complaints to the EEOC and prior lawsuit in this Court were protected activities within the meaning of Title VII that occurred before the personnel actions at issue in this case.

>    advertised via Vacancy Announcement (VA) CLT-12-516492.
>
> 4. Between August 21 and 23, 2012, Complainant was denied the opportunity to work overtime hours.
>
> 5. On or about October 24, 2012, Complainant was not selected for the Supervisory Transportation Security Officer (STSO) position advertised via Vacancy Announcement (VA) CLT-12-516491.
>
> 6. On February 22, 2013 a Transportation Security Manager stated that the scheduled overtime shift Complainant had worked the previous day was "illegal", and Complainant was not paid for the hours he had worked.

(Doc. No. 1: Compl. at 2).

Prior to filing this action, Plaintiff filed an EEO complaint and litigated all six claims of retaliation in administrative proceedings before the EEOC. On October 5, 2012, Plaintiff initiated the administrative complaint process by contacting an EEO counselor. (Doc. No. 10-1: EEO Counselor's R. at 2). Plaintiff filed a formal administrative complaint with TSA on December 4, 2012. (Doc. No. 10-2: Individual Compl. of Employment Discrimination).[3] After an independent EEO investigator investigated Plaintiff's claims, the investigator issued a report of investigation ("ROI"). (Doc. No. 10-3: ROI). Plaintiff requested a hearing before an EEOC Administrative Judge.

After the parties had the opportunity to conduct full discovery, the Administrative Judge granted TSA's motion for summary judgment on all six of

---

[3] Initially, Plaintiff only presented claims 1–5. Plaintiff subsequently amended his complaint to add the sixth claim of retaliation regarding alleged nonpayment for overtime hours on February 22, 2013.

3

Plaintiff's claims. (Doc. No. 10-4: Administrative Judge Decision and Order). The Administrative Judge found that Plaintiff could not establish a prima facie case of retaliation regarding Claims 1 through 4 because Plaintiff did not proffer "evidence that the relevant decision makers were aware of his prior discrimination complaints." (Id. at 9–10). Regarding Claim 5, the Administrative Judge concluded that Plaintiff could not establish a prima facie case of reprisal "because the record evidence shows [Plaintiff] did not apply for an LTSO position"—the position for which Plaintiff alleges he was not selected." (Id. at 10). And finally, with respect to Claim 6, the Administrative Judge determined that "a reasonable fact finder would not [find that Plaintiff could] establish the Agency retaliated against him" because Plaintiff had "not proffered probative evidence showing the Agency's legitimate non-retaliatory reasons for its actions [were] pretext" for retaliation. (Id. at 10–11).

Plaintiff appealed the Administrative Judge's order to the EEOC's Office of Federal Operations ("OFO"). On October 27, 2017, OFO denied the appeal and affirmed the Administrative Judge's order. (Doc. No. 10-5: OFO Decision and Order). On December 6, 2017, Plaintiff timely filed this action. (Doc. No. 1: Compl.). On March 2, 2018, Defendant filed a Combined Motion to Partially Dismiss Plaintiff's Complaint and Motion for Summary Judgment. (Doc. No. 10). Plaintiff filed an untimely Response on March 23, 2018—four days after the deadline. (Doc. No. 11).[4]

---

[4] The Court notes that it "need not consider" Plaintiff's Response since it was untimely filed, and Plaintiff neither requested an extension of the deadline nor offered any explanation for his untimely filing. Nevertheless, the Court is mindful of the wide

4

Defendant filed a Reply on April 2, 2018. (Doc. No. 14). Having been fully briefed, the matter is now ripe for adjudication.

## II. LEGAL STANDARD

### A. Motion to Dismiss Under Fed. R. Civ. P. 12(b)(1)

A motion to dismiss under Rule 12(b)(1) seeks to dismiss a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The existence of subject matter jurisdiction is a threshold issue the court must address before considering the merits of the case. Jones v. Am. Postal Workers Union, 192 F.3d 417, 422 (4th Cir. 1999). "The subject matter jurisdiction of federal courts is limited and the federal courts may exercise only that jurisdiction which Congress has prescribed." Chris v. Tenet, 221 F.3d 648, 655 (4th Cir. 2000) (citing Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)). Subject matter jurisdiction is so limited that federal "[c]ourts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." Hertz Corp. v. Friend, 559 U.S. 77, 94 (2010) (internal citations omitted). "No party can waive the defect, or consent to [subject matter] jurisdiction. No court can ignore the defect; rather a court, noticing

---

latitude afforded to the pleadings of pro se litigants, and therefore, chooses to consider Plaintiff's Response regardless of his untimely filing. See Haines v. Kerner, 404 U.S. 519, 520 (1972) (directing courts to "[c]onstru[e] [a pro se] petitioner's inartful pleading liberally"). Jordan Hydroelectric Ltd. P'ship v. 1.26 Acres, No. 09-cv-288, 2010 WL 780165, at *2 (M.D.N.C. Feb. 26, 2010) (noting that the Court need not consider a party's objection to a Magistrate Judge's report and recommendation when the objection was filed just one day late).

5

the defect, must raise the matter on its own." Wisconsin Dep't of Corr. v. Schacht, 524 U.S. 381, 389 (1998) (internal citations omitted).

"In the Fourth Circuit, the exhaustion requirement of antidiscrimination statutes functions as a jurisdictional bar where a plaintiff has failed to comply with it." Seda v. Colvin, 2018 WL 461443, at *6 (D. Md. Jan. 18, 2018), aff'd, 719 F. App'x 288 (4th Cir. 2018), cert. denied sub nom. Seda v. Berryhill, 139 S. Ct. 214 (2018); Balas v. Huntington Ingalls Indus., Inc., 711 F.3d 401, 406 (4th Cir. 2013) ("An employee seeking redress for discrimination cannot file suit until she has exhausted the administrative process." (citing 42 U.S.C. § 2000e–5(b))). Therefore, this Court lacks subject matter jurisdiction over any Title VII claim in which the plaintiff did not exhaust his administrative remedies. Balas, 711 F.3d at 406–07; Melendez v. Sebelius, 2014 WL 1292221, at *4 (D. Md. Mar. 27, 2014) ("The failure by a plaintiff to exhaust administrative remedies deprives the federal courts of subject matter jurisdiction."). The exhaustion requirement includes the requirement of complying with applicable deadlines governing the EEO complaint process as established in EEOC regulations. Green v. Brennan, 136 S. Ct. 1769, 1775–76 (2016); see also Weick v. O'Keefe, 26 F.3d 467, 469 (4th Cir. 1994) (noting that an aggrieved employee bears "the burden of moving forward within an established time limit"). Generally, when a plaintiff fails to meet these mandatory deadlines, he has failed to exhaust his administrative remedies, and dismissal of his complaint is appropriate. Lorenzo v. Rumsfeld, 456 F. Supp. 2d 731, 734 (E.D. Va. 2006); Seda, 2018 WL 461443, at *6 ("An aggrieved party who fails to comply with the applicable administrative

6

procedures has failed to exhaust her administrative remedies and is generally barred from filing suit.").

B. Motion for Summary Judgment Under Fed. R. Civ. P. 56

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id. The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted). "The burden on the moving party may be discharged by 'showing' . . . an absence of evidence to support the nonmoving party's case." Id. at 325.

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S.

at 248; accord Sylvia Dev. Corp. v. Calvert Cty., Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (internal citations omitted). The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. Anderson, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. Id. at 249-50.

III. DISCUSSION

    A. **Dismissal with prejudice of Plaintiff's Claims 1, 2, and 5 for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) is appropriate.**

To seek relief from a federal court under Title VII, Plaintiff must first comply with "rigorous administrative exhaustion requirements and time limitations" established in EEOC regulations. Brown v. Gen. Servs. Admin., 425 U.S. 820, 833 (1976). Under 29 C.F.R. § 1614.105(a)(1), "[a]n aggrieved person must initiate contact with a[n] [EEO] Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action" alleged to have violated Title VII. "In general, the failure to consult with an EEO counselor within the required time frame is grounds for dismissing an employee's Title VII claim." Lorenzo, 456 F. Supp. 2d at 734 (citing Zografov v. Veterans Admin. Med. Ctr., 779 F.2d 967, 970 (4th Cir. 1985)); see also Nealon v.

Stone, 958 F.2d 584, 589 (4th Cir. 1992) (affirming dismissal of Title VII claim because of untimely counselor contact).

Here, with respect to Plaintiff's first two claims, Plaintiff alleges that the personnel actions which Plaintiff complains of as violating Title VII occurred on February 4 and April 5, 2012. (Doc. No. 1 at 2). Yet Plaintiff waited to contact an EEO counselor regarding these personnel actions until October 5, 2012. This far exceeds the forty-five-day window for EEO contact prescribed by the regulation for both personnel actions.[5] Therefore, Plaintiff failed to comply with the mandatory regulatory requirement of timely counselor contact—a prerequisite to bringing a Title VII suit in this Court. Plaintiff has failed to present any evidence that would justify this Court excusing his untimely delay, and therefore, dismissing Claims 1 and 2 for lack of subject matter jurisdiction is appropriate. Seda, 2018 WL 461443, at *7 (noting that the plaintiff failed to offer "any evidence that would allow [the court] to find that his delay was justifiable" and concluding "that granting summary judgment [was] appropriate on the basis of [the] plaintiff's failure to timely exhaust administrative remedies").

Regarding Claim 5, Plaintiff alleges that Defendant retaliated against him on or about October 24, 2012 by not selecting him for a position advertised via Vacancy

---

[5] In fact, the record reflects that the actual dates of the personnel actions occurred on April 22 and June 3, 2012. Defendant generously points this out, which would put Plaintiff closer to the 45-day-window, but still 167 days after the effective date of the first action and 125 days after the effective date of the second action.

Announcement CLT-12-516491. (Doc. No. 1 at 2). Yet, later in his Complaint, Plaintiff concedes that he "did not apply for the position." (Id. at 9). Accordingly, Plaintiff precludes his own retaliation claim: because Plaintiff did not even apply for the position, he cannot state a retaliation claim based on his non-selection. Additionally, as noted by OFO, Plaintiff abandoned this claim during the administrative process by acknowledging that he did not apply for the position (Doc. No. 10-5 at 5, 7 ("We also take note of the fact that claim (5) is not at issue since both parties agree that [Plaintiff] did not apply for the relevant position.")). When a plaintiff abandons his EEO claim, "this Court does not have subject matter jurisdiction." See, e.g., Smeltzer v. Potter, No. 10-cv-178, 2010 WL 4818542, at *3 (W.D.N.C. Nov. 22, 2010). Therefore, the Court dismisses Claim 5 for lack of subject of subject matter jurisdiction as well.

### B. Summary judgment in favor of Defendant is appropriate on Plaintiff's Claims 3, 4, and 6 under Fed. R. Civ. P. 56.

Defendant seeks summary judgment on Plaintiff's Claims 3, 4, and 6. The Court will address each Claim in turn.

### 1. Defendant is entitled to summary judgment on Claim 3 because Plaintiff cannot show a causal connection between his prior EEO activity and his non-selection for an STSO position.

Title VII prohibits an employer from discriminating against his employee because he "has opposed any . . . unlawful employment practice" under Title VII. 42 U.S.C. § 2000e–3(a). A plaintiff may prove a retaliation claim in violation of

10

Title VII either through direct and indirect evidence of retaliatory animus, or through the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Foster v. Univ. of Maryland-E. Shore, 787 F.3d 243, 249 (4th Cir. 2015). Here, Plaintiff has offered no direct or indirect evidence of retaliatory animus, so he must proceed under the McDonnel-Douglas framework. Under this framework, Plaintiff must first make a prima facie case of retaliation. Foster, 787 F.3d at 250. To make a prima facie case for a retaliation claim, Plaintiff must show that "(1) he engaged in protected conduct; (2) an adverse action was taken against him by [Defendant]; and (3) there was a causal connection between the first two elements." Ulrich v. CEXEC, Inc., 709 F. App'x 750, 753 (4th Cir. 2017) (per curiam). But, if Defendant offers a legitimate, non-discriminatory reason for the action in question, Plaintiff must prove by a preponderance of the evidence that the proffered reason was pretextual. Id. "When an employer gives a legitimate, nondiscriminatory reason for discharging the plaintiff, it is not [the court's] province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." Laing v. Federal Exp. Corp., 703 F.3d 713, 722 (4th Cir. 2013).

Here, Plaintiff's retaliation claim must fail because he cannot establish the third element of a prima facie retaliation claim—that there was a causal connection between Plaintiff engaging in protected conduct and Defendant taking an adverse action against him. In Claim 3, Plaintiff alleges that he was not selected for a promotion to an STSO position advertised via vacancy announcement CLT-12-516492. (Doc. No. 1 at 2). Prior to applying for this position, Plaintiff had engaged

11

in EEO activity—"protected activity" under Title VII. Plaintiff claims that, although he applied and was qualified for the STSO position, Defendant did not select him because it knew that Plaintiff had engaged in EEO activity. Therefore, he alleges he was not selected for the position based on retaliatory reasons.

The interviewing and selection process for this open position had three steps: (1) candidates interviewed with a three-member panel, and then the panel ranked the candidates; (2) the CLT Deputy Assistant Federal Security Director for Screening ("DAFSD-S") Scott Byers reviewed the panel's rankings and determined which candidates should be recommended for selection; and (3) CLT Deputy Federal Security Director ("DFSD") Kurt Jordan made the final selection decision. (Doc. No. 10-8: Kurt Jordan's Aff. at 4–6; Doc. No. 10-7: Scott Byers's Aff. at 9–10). The record reflects that DFSD Jordan, the final selecting official, did not engage in any independent decision-making as he did not do "anything other than concur with the recommendations presented to him." (Doc. No. 10-4 at 9). Yet Plaintiff seems to stake his entire third claim on the allegation that DFSD Jordan had knowledge of his prior EEO activity. (Doc. No. 11 at 8). This is irrelevant. Because "the relevant decision makers" were the interview panel members and DAFSD-S Byers in his recommending capacity, they were the only TSA employees who could potentially have retaliated against Plaintiff. But, the undisputed record evidence reflects that none of these TSA officials were aware of Plaintiff's prior EEO activity at the time

they made their decisions about Plaintiff's application.[6] In order to establish prima facie causation, there must be evidence that "the employer took adverse action against the employee soon after becoming aware of [the employee's] protected activity." Strothers v. City of Laurel, Md., 895 F.3d 317, 335–36 (4th Cir. 2018). Because Plaintiff has not proffered any evidence that the relevant decisionmakers— the interview panel and DAFSD-S Byers—were aware of his EEO activity at the time of the selection decision, Plaintiff cannot establish the causation element of his retaliation claim. Thus, Plaintiff's Claim 3 fails as a matter of law.[7]

> 2. <u>Defendant is also entitled to summary judgment on Claim 4 because Plaintiff cannot establish a causal connection between his prior EEO activity and denial of the opportunity to work overtime.</u>

Similarly, Claim 4 must fail as well because Plaintiff cannot show that the relevant decisionmakers were aware of Plaintiff's prior EEO activity. Plaintiff

---

6 (See Doc. No. 10-6 (sworn affidavits from panel members Dalia West, Delina McAllister, and David Spence acknowledging that they were unaware if Plaintiff had ever engaged in prior EEO activity); Doc. No. 10-4 at 10 ("Panel members West, McAllister, and Spence testified they were not aware of [Plaintiff]'s prior EEO activity. [Plaintiff] ha[s] not proffered probative evidence rebutting their testimony."); Doc. No. 10-7 at 18 (Recommending Official Byers's sworn affidavit stating that he had "no knowledge" of Plaintiff's prior EEO activity); Doc. No. 10-7 at 19 (stating specifically that Scott Byers had "no knowledge" of Plaintiff's prior EEO activity at the time Byers made his recommendations for the STSO position at issue); Doc. No. 10-4 at 10 ("Byers testified [he was] not aware of [Plaintiff]'s prior EEO activity."))

7 Additionally, the record reflects that the ten candidates DAFSD-S Byers recommended scored higher in the interview process than Plaintiff, who tied for fifteenth place. (Doc. No. 10-7 at 3, 11–13). Therefore, Plaintiff's application was not passed on to DFSD Jordan because the interview panel and DAFSD-S Byers considered other applicants "better qualified individuals" based on "the merit of their experience and performance in the interview process" than Plaintiff. (Doc. No. 10-8 at 7; Doc. No. 10-7 at 12–13).

bases his fourth claim on his allegation that, between August 21 and 23, 2012, Defendant denied him the opportunity to work overtime hours. (Doc. No. 1 at 2). The record reflects, and Plaintiff acknowledges, that he made his overtime request to TSA management officials Leticia Ford and Dalia West. (Doc. No. 1 at 9; Doc. No. 10-4 at 6). The record also demonstrates that neither Ford nor West had any knowledge of Plaintiff's prior EEO activity at the time they denied Plaintiff the opportunity to work over time. (Doc. No. 1 at 9; Doc. No. 10-4 at 11; Doc. No. 10-9; Doc. No. 10-6 at 12–16). Thus, their decision to deny Plaintiff's request to work overtime could not have been based on a desire to retaliate against him for his prior EEO activity. Although Plaintiff avers that further discovery might reveal that Ford knew about his prior EEO activity at the time she denied him overtime, this assertion is unsupported and is insufficient to overcome the undisputed record evidence that these TSA management officials lacked knowledge of Plaintiff's prior EEO activity. Moreover, Plaintiff already had the opportunity to conduct full discovery during the EEOC proceedings and did not garner any evidence showing that Ford or West had knowledge of his EEO activity. The Court finds that Plaintiff's wholly speculative assertion—that further discovery might reveal Ford or West had knowledge of his previous EEO activity—inadequate to defeat summary judgment.[8] Accordingly, the

---

8 "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" Anderson, 477 U.S. at 248 (quoting First Nat'l Bank of Arizona v. Cities Service Co., 391 U.S. 253, 288 (1968)). "If a party could defeat summary judgment simply by offering or speculating as to

Court grants summary judgment on Plaintiff's Claim 4 because Plaintiff fails to establish the causation element of his retaliation claim.

>    3. <u>Defendant is entitled to summary judgment on Claim 6 because Plaintiff cannot demonstrate a causal connection between his prior EEO activity and the refusal to pay him overtime wages for hours he worked during his regularly scheduled shift.</u>

In Claim 6, Plaintiff alleges that Defendant retaliated against him by refusing to pay him overtime wages for hours he worked on February 21, 2013. (Doc. No. 1 at 2). The record reflects that despite being scheduled for eight hours of annual leave during his regular eight-hour shift on February 21, 2013, Plaintiff instead clocked in to work at the beginning of his regular shift and worked for four hours. Plaintiff thought that he would be paid overtime wages for the hours he worked that day since he was scheduled to be on leave. In fact, Plaintiff believed that he would be charged for the full eight hours of annual leave and then paid for the four hours of work he performed at the overtime rate. The next day, on February 22, 2013, TSA management official Jose Padilla informed Plaintiff that, under TSA policy, an employee cannot be charged leave and paid overtime wages for concurrent hours. (Doc. No. 1 at 10). Therefore, Padilla told Plaintiff that Plaintiff would be charged

---

possible witness testimony at trial, then summary judgment could never be granted." <u>Ateliers de la Haute-Garonne v. Broetje Automation-USA Inc.</u>, 817 F. Supp. 2d 394, 408 (D. Del. 2011), <u>rev'd in part on other grounds</u>, 717 F.3d 1351 (Fed. Cir. 2013).

for four hours of annual leave and would receive four hours of normal work pay. (Doc. No. 10-5 at 10).

Despite this being explicit TSA policy, Plaintiff attempts to attribute retaliatory animus to Padilla's denial of paying Plaintiff overtime wages. (Doc. No. 1 at 10). Plaintiff argues that Padilla was incorrect about TSA policy and that nothing in the agency's policy precluded him from being paid overtime wages. (Id.). Plaintiff is wrong. The undisputed evidence shows that Padilla correctly interpreted and applied TSA policy. (Doc. No. 12: TSA Handbook to Management Directive No. 1100.55-8 at 13, § C.2.(a)(1) ("Hours worked within [an employee's] scheduled tour of duty are paid at the rate of basic pay plus any applicable locality pay."); Doc. No. 10-10: Padilla Aff. at 3 (asserting that no employee at CLT has ever been allowed to work overtime while simultaneously taking annual leave "because the payroll system does not accept" it). Moreover, even if Padilla had incorrectly interpreted and applied TSA policy, Plaintiff cannot proffer any evidence that Padilla's reliance on his own understanding of TSA policy was a pretext for retaliation. Plaintiff admits that he does not know of any employee who was ever paid overtime wages for hours worked while also taking annual leave; therefore, Plaintiff cannot allege or prove that he was treated differently than anyone else. (Doc. No. 10-5 at 10). Accordingly, the Court finds that Plaintiff has failed to present any competent evidence demonstrating that denial of overtime pay was retaliatory, and therefore, Defendant is entitled to

summary judgment on Claim 6.[9]

## IV. CONCLUSION

Accordingly, for the reasons stated above, the Court dismisses Plaintiff's Claims 1, 2, and 5 for lack of subject matter jurisdiction and grants summary judgment in favor of Defendant on Plaintiff's Claims 3, 4, and 6. Therefore, Plaintiff's claims against Defendant fail as a matter of law, and dismissal of this action is appropriate.[10]

---

[9] King v. Rumsfeld, 328 F.3d 145, 154 (4th Cir. 2003) (concluding that summary judgment for the defendant was appropriate when the plaintiff could neither rebut the legitimate, non-retaliatory reason for a personnel decision nor proffer evidence "sufficiently demonstrative of retaliatory intent"); Lewis v. Gibson, 621 F. App'x 163, 165–66 (4th Cir. 2015) (holding that summary judgment was appropriate when plaintiff "offer[ed] no direct evidence of retaliatory motive" and "present[ed] nothing to suggest that the [defendant]'s proffered basis [for the challenged personnel action] was insincere"); see also Oliver v. Roquet, 858 F.3d 180, 195 (3d Cir. 2017) ("Absent supporting facts that make it reasonable to draw an inference of retaliation, . . . conclusory assertions of a cause-and-effect relationship between specific protected activities and a later adverse action are insufficient to plead causation.").

[10] For the first time in this litigation, Plaintiff invokes the Uniformed Services Employment and Reemployment Rights Act ("USERRA") and a Supreme Court case applying that statute, Staub v. Proctor Hosp., 562 U.S. 411 (2011), in his responsive briefing to Defendant's Combined Motion to Partially Dismiss Plaintiff's Complaint and Motion for Summary Judgment. (Doc. No. 11 at 9, 19, 21). The Court is unsure how and why this statute relates to Defendant's Combined Motion, as Plaintiff has not plead a USERRA claim in this suit, nor can he amend his Complaint to include this cause of action by way of a response in opposition to the Combined Motion. See, e.g., Cole v. Wells Fargo Bank, N.A., No. 15-cv-39, 2016 WL 737943, at *4 n.9 (W.D.N.C. Feb. 23, 2016) ("This Court cannot consider new claims raised in a Response Brief; seeking to add claims this way is inappropriate because it is comparable to amending the Complaint . . . without first obtaining leave of court."); United States ex rel. Moore v. Cardinal Fin. Co., L.P., No. 12-cv-1824, 2017 WL 1165952, at *13 n.22 (D. Md. Mar. 28, 2017) (noting that a plaintiff "cannot amend his pleadings through opposition" to a motion to dismiss); Mohammed v. Daniels, 13-cv-3077, 2015 WL 470469, at *3 n.2 (E.D.N.C. Feb. 4, 2015) ("To the extent

**IT IS THEREFORE ORDERED THAT:**

1. Defendant's Combined Motion to Partially Dismiss Plaintiff's Complaint and Motion for Summary Judgment, (Doc. No. 10), is **GRANTED**. Specifically, Plaintiff's Claims 1, 2, and 5 are **DISMISSED WITH PREJUDICE**. And the Court grants summary judgment in favor of Defendant on Plaintiff's Claims 3, 4, and 6.
2. Plaintiff's Complaint, (Doc. No. 1), is **DISMISSED**; and
3. The Clerk of Court is directed to close this case.

Signed: March 15, 2019

Robert J. Conrad, Jr.
United States District Judge

---

plaintiff attempts to raise new claims in his responses to defendants' motions to dismiss, those claims are not properly before the court and will not be considered."); Barclay White Skanska, Inc. v. Battelle Mem. Inst., 262 F. App'x 556, 563 (4th Cir. 2008) (holding that a plaintiff cannot raise new claims not pled in the complaint in response to a motion for summary judgment). Thus, this Court disregards Plaintiff's arguments concerning USERRA and Staub.